

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00389-CV

_____

P.C. AS NEXT FRIEND OF C.C., A MINOR, Appellant

V.

E.C., Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-303940-18

Before Sudderth, C.J.; Bassel and Womack, JJ.
Opinion by Chief Justice Sudderth

# OPINION

Appellant P.C. (Mother) sued Appellee E.C. (Grandmother) for negligence and civil conspiracy related to the alleged sexual assault of C.C. (Granddaughter) by T.C., Grandmother's spouse. Grandmother filed a no-evidence motion for partial summary judgment on the civil conspiracy claim, challenging the sufficiency of the evidence to support each of the claim's discrete elements: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages occurring as a proximate result. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (setting out elements of civil conspiracy).

In her response to Grandmother's no-evidence motion, Mother incorporated portions of Grandmother's deposition and T.C.'s deposition into the factual recitation of her response, and she attached to her response Grandmother's September 6, 2017 deposition, a copy of a September 17, 2013 letter from the Department of Family and Protective Services (DFPS), and T.C.'s July 23, 2018 deposition, in which T.C. pleaded the Fifth Amendment in response to multiple questions about the child, Grandmother, and the alleged sexual assault. In her deposition, Grandmother said that T.C. had been arrested in 2014 for sexual assault but that a grand jury had no-billed the sexual assault allegations against him. Grandmother did not refuse to answer any questions on the basis of the Fifth Amendment.

2

Grandmother objected to Mother's summary judgment evidence, complaining, among other things, that an adverse inference could not be drawn from T.C.'s assertion of his Fifth Amendment privilege against self-incrimination. At the summary judgment hearing, the trial court sustained Grandmother's objection to the DFPS letter and overruled Grandmother's objections to the deposition excerpts. The trial court granted Grandmother's no-evidence motion and, in its summary judgment order, the trial court sustained in part and denied in part Grandmother's evidentiary objections without identifying a specific ruling as to each objection.

The trial court signed an order granting Mother's unopposed motion to sever her civil conspiracy claim on October 25, 2018, making the summary judgment final as of that date.[1] On November 29—three days after the trial court's plenary power had expired—the trial court signed a written order on its evidentiary rulings.[2] In its

---

[1]Because of the role of the Fifth Amendment in this case, the parties could have requested a permissive appeal under civil practice and remedies code section 51.014(d) as an alternative to severance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (stating that on a party's motion or sua sponte, a trial court in a civil action may, by written order, permit an appeal from an order that is not otherwise appealable if the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation).

[2]At first blush the order appeared to have been dated November 24, 2018, the last day of the trial court's plenary power. But on further examination, the order must have been signed on November 29—the loop on the number 9 was not completely closed, giving it the initial appearance of being a 4—because the record reflects that Grandmother's counsel did not submit the draft order until November 27, 2018. The trial court's docket entry reflects that the order was signed on November 29, 2018.

written order, the trial court sustained Grandmother's objection to the excerpts of T.C.'s deposition "consisting of the questions propounded by plaintiff's counsel because an adverse inference cannot be drawn from his assertion of his Fifth Amendment privilege against self-incrimination" and overruled Grandmother's objection to the DFPS letter. Whether this written order is valid or void is irrelevant to our disposition below, so we do not address it here.[3] *See* Tex. R. App. P. 47.1 (requiring the court to hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to the appeal's final disposition). *But see Rankin v. Union Pac. R. Co.*, 319 S.W.3d 58, 65 (Tex. App.—San Antonio 2010, no pet.) (holding that an order signed after the trial court's plenary power had expired was not a "timely ruling").

In a single issue, Mother asks us to determine whether nonparty T.C.'s invoking his Fifth Amendment privilege gave rise to an adverse presumption under rule of evidence 513 sufficient to defeat Grandmother's no-evidence motion for summary judgment, arguing that "the summary judgment record contains ample evidence to raise a genuine issue of material fact on all challenged elements through the application of an adverse presumption."

Texas Rule of Evidence 513 states,

---

[3]Mother does not argue that the trial court erred by excluding the DFPS letter.

4

(a) Comment or Inference Not Permitted. Except as permitted in Rule 504(b)(2),[4] neither the court nor counsel may comment on a privilege claim—whether made in the present proceeding or previously—and the factfinder may not draw an inference from the claim.

(b) Claiming Privilege Without the Jury's Knowledge. To the extent practicable, the court must conduct a jury trial so that the making of a privilege claim is not suggested to the jury by any means.

*(c) Claim of Privilege Against Self-Incrimination in a Civil Case. Subdivisions (a) and (b) do not apply to a party's claim, in the present civil case, of the privilege against self-incrimination.*

. . . .

Tex. R. Evid. 513 (emphasis added).

Thus, as set out in subsection (c) above, in a civil case, a factfinder may draw negative inferences from a *party*'s invocation of the Fifth Amendment privilege against self-incrimination. *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007); *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied). Subsection (c) provides a narrow exception to the general rule stated in rule 513(a), which prohibits drawing any inference from a claim of privilege. *See* Tex. R. Evid. 513(a), (c); *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 215 (Tex. 2005) (referencing rule 513(a) in the context of malice in the surgeon credentialing process). The idea behind this narrow exception is that a party in a civil case who uses the privilege to protect relevant information, instead of to avoid subjecting himself to criminal responsibility, converts

---

[4]Rule 504(b)(2) states that in a criminal case, if other evidence indicates that an accused's spouse could testify to relevant matters, the accused's failure to call the spouse to testify is a proper subject of comment by counsel. Tex. R. Evid. 504(b)(2).

the Fifth Amendment privilege from shield to sword against the other party who needs that information. *See Tex. Dep't of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760–61 (Tex. 1995).

But ordinarily the adverse inference goes into effect when a party in a civil action refuses "'to testify *in response to probative evidence offered against [him]*.'" *Webb*, 331 S.W.3d at 883 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558 (1976)); *see also In re A.H.*, No. 02-17-00222-CV, 2017 WL 5180785, at *4 (Tex. App.—Fort Worth Nov. 9, 2017, pet. denied) (per curiam) (mem. op.) (referencing *Baxter* for the proposition that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them). And a claim of privilege will not substitute for relevant evidence. *Webb*, 331 S.W.3d at 883 ("Without some probative evidence as to the elements of the Webbs' claims, any negative inference that might be drawn from Maldonado's invocation of his privilege against self-incrimination cannot rise beyond mere suspicion.").

Although Mother acknowledges that the federal rules of evidence do not contain the equivalent of Texas Rules of Evidence 503–513, she nevertheless refers us to federal precedent to construe the application of rule 513 in the case before us, citing *Brink's, Inc. v. New York*, 717 F.2d 700, 708 (2d Cir. 1983),[5] *United States v. 4003-*

---

[5]In *Brink's*, the City of New York contracted with Brink's to collect parking meter coins but cancelled the contract after some of the Brink's employees stole the

*4005 5th Ave.*, 55 F.3d 78, 83–84 (2d Cir. 1995),[6] *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1086–87 (5th Cir. 1979) (holding that it was constitutionally impermissible to dismiss with prejudice libel action of plaintiff under investigation by grand jury just because he exercised his privilege against self-incrimination in his deposition), *FDIC v. Fid. & Deposit Co.*, 45 F.3d 969, 978 (5th Cir. 1995),[7] and *LiButti*

funds. 717 F.2d at 702. Brink's sued the City for money due under the contract, the City counterclaimed for breach and negligent hiring and supervision, and Brink's served a third-party complaint on some of its employees that had been arrested, charged, and convicted of theft of the parking meter funds. *Id.* Those employees—parties to the case—invoked their Fifth Amendment privilege against self-incrimination at trial. *Id.* at 707. The court held that the employees' claims of privilege were admissible and competent evidence under the case's circumstances given that there was "no constitutional mandate [under] *Baxter* . . . against their admission." *Id.* at 710.

[6]In *5th Ave.*, a civil forfeiture case, the party opposing forfeiture, who had been convicted of possessing and conspiring to distribute heroin and cocaine, attempted to withdraw his invocations of his Fifth Amendment privilege against self-incrimination from earlier in the forfeiture case, but the district court did not allow him to do so and ruled that he could not submit any material previously asserted to be within the privilege. 55 F.3d at 80–81. The court held that while a prior assertion of the Fifth Amendment would not preclude a litigant's later attempt to submit evidence, the district court did not exceed its discretion when it barred the defendant from testifying to matters covered by his prior Fifth Amendment claim. *Id.* at 80. In its discussion of the Fifth Amendment privilege's use in civil cases, the court observed that an invocation of the privilege is not a substitute for relevant evidence and that the party who asserts the privilege must bear the consequence of lack of evidence. *Id.* at 83.

[7]After the FDIC took receivership of a bank that failed after its guarantor refused to pay its claim under a fidelity bond, it stepped into the bank's place in the three-week jury trial on the fidelity bond. 45 F.3d at 973. The bond company argued, among other things, that the district court improperly instructed the jury that it could draw an inference from an invocation of the Fifth Amendment by nonparties. However, the district court instructed the jury not to find liability based solely upon

*v. United States*, 178 F.3d 114, 119–20 (2d Cir. 1999) (holding district court did not abuse its discretion in assessing the weight it accorded to the adverse inference when its ruling did not rest solely upon the adverse inference).

Mother also relies upon *Wil-Roye Investment Co. II v. Washington Mutual Bank, FA*, 142 S.W.3d 393 (Tex. App.—El Paso 2004, no pet.), to support her argument that nonparty T.C.'s assertion of the Fifth Amendment privilege against self-incrimination constitutes sufficient evidence to defeat the no-evidence summary judgment on her conspiracy claim. In *Wil-Roye*, the El Paso court held that the evidence established that because nonparty Steve Holder—who exercised his Fifth Amendment right during his deposition and who settled with the appellants—had acted as the appellants' agent, the appellants would have obtained an unfair advantage if they had been able to present favorable portions of his deposition testimony while precluding cross-examination on the unfavorable, privileged portions that directly related to the appellee bank's defense. *Id.* at 403, 407. The court also held that even if the trial court had erred by drawing adverse inferences from Holder's privilege claim, other evidence established that Holder was involved in the fraudulent transaction such that the trial court could have concluded, independent of the privilege claim, that Holder lacked credibility. *Id.* Mother asks us to construe "party" under rule 513 in the

an adverse inference from a witness's invocation of the Fifth Amendment, and the fifth circuit court refused "to adopt a rule that would categorically bar a party from calling, as a witness, a non-party who had no special relationship to the party, for the purpose of having that witness exercise his Fifth Amendment right." *Id.* at 977–78.

8

manner that the El Paso court did in *Wil-Roye* using rule 801. *See id.* at 406–07 ("[W]e conclude that the rationale for allowing introduction of an agent's admissions against the principal under Texas Rule of Evidence 801(d)(2)(D) also justifies admission of evidence showing that the agent/witness has exercised his Fifth Amendment privilege at least where the questions substantially relate to a party's claim or defense.").

Mother also refers us to *Ward v. Dallas Texas National Title Co.*, 735 S.W.2d 919 (Tex. App.—Dallas 1987, writ ref'd n.r.e.), to support her argument that "[p]roviding greater protections to a non-party who faces no civil liability than would be provided to a party facing such liability is inconsistent with basic concepts of fairness and level playing fields." *Ward* was a traditional summary judgment case in which two alleged co-conspirators invoked the Fifth Amendment privilege against testifying. *Id.* at 920–22. In that case the court held that the summary judgment record raised fact questions with regard to whether a conspiracy existed, whether each appellee was a member, and the damages for any real loss of value of the property in a real-estate flipping scheme. *Id.* at 920–22 & n.6 (noting that the defendants' "self-serving denials are not readily controvertible and thus not proper summary judgment evidence"). Because two of the defendants' assertions of their Fifth Amendment privilege against self-incrimination "raise[d] a material question of fact as to the existence and constituency of the alleged conspiracy," the court concluded that summary judgment was not appropriate. *Id.* at 921–22. The court also based its conclusion on the nature

9

of the plaintiffs' claims and the defendants' reliance upon the interested witness testimony that was not readily controvertible. *Id.*

We note ab initio that—other than Supreme Court precedent on questions of federal law—we are not bound by federal precedent. *See Pidgeon v. Turner*, 538 S.W.3d 73, 83 (Tex.), *cert. denied*, 138 S. Ct. 505 (2017); *Fort Worth ISD v. Palazzolo*, No. 02-18-00205-CV, 2019 WL 2454866, at *16 (Tex. App.—Fort Worth June 13, 2019, no pet. h.) (mem. op.); *Barstow v. State*, 742 S.W.2d 495, 500–01 & n.2 (Tex. App.—Austin 1987, writ denied). Likewise, while we respect our sister courts' decisions, we are not bound by their precedent either. *See Palazzolo*, 2019 WL 2454866, at *14; *Raymax Mgmt., L.P. v. SBC Tower Holdings LLC*, No. 02-16-00013-CV, 2017 WL 3821897, at *1 n.4 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op. on reh'g).

In her deposition, Grandmother testified that T.C. was investigated by Child Protective Services (CPS) with regard to Granddaughter's 2006 sexual assault allegations against an unknown male but that they did not find out that T.C. had been a subject of CPS's investigation until 2013. She stated that she did not recall CPS's asking T.C. any questions about anything related to allegations of the sexual assault of Granddaughter in 2006, but she did recall that in 2006, CPS told Grandmother that they "didn't have a reason to believe" that T.C. had sexually assaulted Granddaughter and that they could resume their regular visitation with the child.

Grandmother testified that between 2006 and 2013, she could not remember any specific time when the children were left alone with T.C. or Granddaughter's

saying anything about being scared to be alone with T.C. or T.C.'s having hurt her. Grandmother said that she first heard about allegations against T.C. for sexually assaulting Granddaughter in August 2013, when the Fort Worth police came to their house with a search warrant. The police took the computer, T.C.'s cell phone, a video camera, another camera, and all of the computer disks and jump drives, including the files that she needed for her job at a school. After the police left, T.C. told Grandmother that Granddaughter had accused him of sexually assaulting her. Although T.C. was arrested in 2014, a grand jury no-billed his case.

During T.C.'s deposition, T.C. gave variations of the following statement— "Based on the advice of Counsel, I assert my Fifth Amendment rights under the United States Constitution and Texas Constitution and choose to remain silent"—in response to:

- whether he had ever been arrested,

- whether Grandmother had ever attempted to obtain legal custody of or secure visitation rights to Granddaughter,

- whether he told Grandmother that CPS was investigating him for Granddaughter's sexual abuse allegation,

- whether Grandmother had told anyone that he had sexually abused Granddaughter,

- whether Grandmother should have notified law enforcement if she had reason to know that he had sexually abused Granddaughter,

- whether he and Grandmother had a meeting of the minds regarding a plan to cover up his sexual abuse of Granddaughter,

11

- whether Grandmother had ever seen or heard anything or locked Granddaughter in a closet as punishment for reporting sexual abuse, and

- whether he had attempted to gain legal custody or secure visitation rights with Granddaughter "for purposes of having access to her for sex," among others.

Because T.C. had been charged with a crime, he had reason to invoke his Fifth Amendment right against self-incrimination with regard to these questions—to protect himself, not Grandmother, from criminal prosecution. Grandmother never invoked the Fifth Amendment during her deposition, and T.C. was not a party to the civil lawsuit brought by Mother against Grandmother. Nor is there any evidence indicating that Grandmother had acted as T.C.'s agent. *Cf. Wil-Roye Inv.*, 142 S.W.3d at 403, 407.

On these facts, we decline to extend rule 513 to allow the drawing of an adverse inference against Grandmother from T.C.'s assertion of his Fifth Amendment privilege. Accordingly, we conclude that the trial court did not err by granting Grandmother's no-evidence motion for summary judgment when nonparty T.C.'s Fifth Amendment invocation did not give rise to an adverse inference against her. *See* Tex. R. Civ. P. 166a(i) (providing that after an adequate time for discovery, a party, without presenting summary judgment evidence, may move for summary judgment on the ground that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial" and that the trial court must grant the motion unless the nonmovant provides summary

12

judgment evidence raising a genuine issue of material fact); *see also Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *3–5 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.) (explaining that when filing a no-evidence motion, the movant's burden is to produce a legally sufficient motion and then the nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact).

Because Mother's summary judgment evidence was insufficient to show one or more of the elements of a civil conspiracy, including that two or more persons had sought to accomplish an unlawful course of action, the trial court did not err by granting Grandmother's motion for summary judgment. *See Tri*, 162 S.W.3d at 556; *Webb*, 331 S.W.3d at 882, 884 (holding that by relying solely on Maldonado's deposition excerpts in which he asserted his Fifth Amendment right against self-incrimination to all questions besides his name, the Webbs failed to present the trial court with more than a scintilla of probative evidence to raise a fact issue on any of the challenged elements in Maldonado's motion for no-evidence summary judgment). We overrule Mother's sole issue.

Having overruled Mother's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: August 26, 2019